OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

May 17, 1999

Mr. John R. Speed, P.E.                           Opinion No. JC-0051
Executive Director
Texas Board of Professional Engineers             Re:   Whether the Board of Professional
P.O. Drawer 18329                                 Engineers is required to determine whether
Austin, Texas 78760-8329                          individuals seeking licensure in Texas pursuant
                                                  to the North American Free Trade Agreement
                                                  are citizens or permanent residents of the
                                                  United States  (RQ-1181)

Dear Mr. Speed:

        You request an opinion from this office clarifying the requirements of the Personal
Responsibility and Work Opportunity Reconciliation Act of 1996 (the "Welfare Reform Act"), and
the North American Free Trade Agreement ("NAFTA") with respect to issuance of professional
licenses to aliens. You suggest that the Welfare Reform Act and NAFTA conflict because "NAFTA
essentially says that anyone who is licensed in one of the member-nations can practice a licensed
trade in the United States, while the Welfare Reform Act restricts license-holders to those who are
citizens or legal residents of the United States." Letter from John R. Speed, Executive Director,
Texas Board of Professional Engineers, to Attorney General Dan Morales 2 (Aug. 10, 1998) (on file
with Opinion Committee). Accordingly, you ask whether the Board of Professional Engineers (the
"Board") is required by the Welfare Reform Act to determine if individuals seeking licensure from
the Board "pursuant to the provisions of NAFTA" are citizens or permanent residents of the United
States.[1] Id. If the individuals are not United States citizens or permanent residents, you also ask
whether the Board must deny them licensure. We conclude that while the Welfare Reform Act
restricts the issuance of professional licenses to aliens based on their immigration status, it does not
limit the issuance of such licenses to citizens and permanent residents of the United States.
Accordingly, the Board may not deny licensure to Canadian or Mexican nationals solely because
they are not citizens or permanent residents of the United States. The Board must verify the
immigration status of Canadian and Mexican nationals who are physically present in this country
to determine their eligibility for a professional license in accordance with the Welfare Reform Act.

        The United States, Canada, and Mexico entered into NAFTA on December 17, 1992, to
establish a free trade area. See North American Free Trade Agreement Between the Government of
the United States of America, the Government of Canada, and the Government of the United

_____
[1]We assume your reference to "legal residents" is to permanent residents of the United States.

Mexican States, ("NAFTA") Vol. I, art. 101 (Dec. 8, 1993). NAFTA was approved and implemented by Congress by the North American Free Trade Agreement Implementation Act, 19 U.S.C.A. §§ 3301-3473 (West Supp. 1998) (effective Dec. 8, 1993). The federal act implementing NAFTA contains a statutory supremacy clause, providing that "[n]o provision of [NAFTA], nor the application of any such provision to any person or circumstance, which is inconsistent with any law of the United States shall have effect." 19 U.S.C.A. § 3312(a) (West Supp. 1998).

Chapter 12 of NAFTA applies to cross-border trade in services, including professional services. *See* NAFTA, Vol. I, art. 1213(2) (definition of "cross-border provision of a service" and "cross-border trade in services"). To ensure that any licensing or certification measure[2] adopted or maintained by a party with respect to nationals of another party, *i.e.*, a citizen or permanent resident of a party, does not constitute an "unnecessary barrier to trade," article 1210(1) directs each party to adopt "objective and transparent criteria" based on competence and ability. *Id.* art. 1210(1); *see also id.* art. 201(1) (definitions of "person of a party" and "national"). In accordance with this objective, article 1210(3) generally requires each party within two years of the date of entry into force of the agreement[3] to eliminate any citizenship or permanent residency requirement for the licensing or certification of professional service providers of another party. *Id.* art. 1210(3); *id.* Vol. II, Annex I, II, & IV; *see also* H.R. REP. NO. 103-361, pt. III, at 178 (1993) (NAFTA obligates each party at both the state and federal level to eliminate any citizenship or permanent residency requirements for licensing or certifying professionals.).

Thus, article 1210(3) of NAFTA simply requires the elimination of citizenship and permanent residency requirements for a professional license. It does not allow anyone licensed in one of the member-nations to practice a licensed trade in the United States. *See* NAFTA, Vol. I, art. 1210; H.R. DOC. NO. 103-159, at 606 (1993) (Professional Licensing) (nothing in NAFTA allows Mexican or Canadian professionals to practice a licensed profession in the United States without meeting state licensing criteria and receiving such licenses nor requires change in state certification or licensing procedures other than elimination of citizenship or permanent residency requirement); H.R. REP. NO. 103-361, pt. III, at 177-78 (1993) (MEDICAL PROFESSIONALS) (same). Nor does article 1210(3) authorize a Mexican or Canadian national to seek and obtain a professional license from a licensing agency in the United States pursuant to its terms as your question suggests. Article 1201(3) specifically provides that nothing in chapter 12 shall be construed to impose an obligation on a party with respect to a national of another party seeking access to its employment market or confer any right on that national with respect to that access or employment. Finally, although in the case of a conflict with the provisions of NAFTA federal law prevails for purposes of domestic law, we do not believe that there is a conflict between article 1201(3) of NAFTA and the Welfare Reform Act.

---

[2] "[M]easure includes any law, regulation, procedure, requirement or practice[.]" NAFTA, Vol. I, art. 201(1).

[3] Article 2203 of NAFTA provides that the "Agreement shall enter into force on January 1, 1994, on an exchange of written notification certifying the completion of necessary legal procedures." *Id.* art. 2203.

The Welfare Reform Act, 8 U.S.C.A. §§ 1601-1646 (West Supp. 1998), restricts the eligibility of aliens, persons who are not United States citizens or nationals,[4] to receive state and local benefits. "State or local public benefits" is defined broadly and includes any "*professional license* . . . provided by an agency of a State or local government." *Id.* § 1621(c)(1)(A). The term does not, however, apply to a professional license for a nonimmigrant whose visa for entry is related to such employment in the United States, or to a citizen of a freely associated state (the Republic of Palau, the Federated States of Micronesia, or the Republic of the Marshall Islands) if section 141 of the applicable compact of free association approved in Public Laws 99-239 or 99-658 or a successor provision is in effect. *Id.* § 1621(c)(2)(A); 48 U.S.C.A. §§ 1901 (West Supp. 1998) (compact of free association with Federated States of Micronesia and Republic of Marshall Islands), 1931 (compact of free association with Republic of Palau). By recent amendment, the Welfare Reform Act's restriction on grant of state or local public benefits does not apply to the issuance or renewal of a professional license by a foreign national not physically present in the United States. *See* Noncitizen Benefit Clarification and Other Technical Amendments Act, Pub. L. No. 105-306, 112 Stat. 2926 (1998) (to be codified at 8 U.S.C. § 1621(c)(2)(C) (1998)).

In general, only a qualified alien, a nonimmigrant under the Immigration and Nationality Act, *id.* §§ 1101-1537 (West Supp. 1970 & 1998) (the "Immigration Act"), or an alien who is paroled into the United States under section 1182(d)(5) of the Immigration Act for less than one year is eligible for "State or local public benefits." *Id.* § 1621(a) (West Supp. 1998). For purposes of the Welfare Reform Act, a "qualified alien" is an alien who at the time she or he applies, receives, or attempts to receive a public benefit is (1) an alien lawfully admitted for permanent residence under the Immigration Act; (2) an alien granted asylum under section 1158 of the Immigration Act; (3) a refugee admitted to the United States under section 1157 of the Immigration Act; (4) an alien paroled into the United States under subsection 1182(d)(5) of the Immigration Act for at least one year; (5) an alien whose deportation is being withheld under subsection 1253(h) of the Immigration Act as in effect before April 1, 1997, or whose removal is being withheld under subsection 1251(b)(3); (6) an alien granted conditional entry under subsection 1153(a)(7) of the Immigration Act as in effect before April 1, 1980; (7) an alien who is a Cuban or Haitian entrant; or (8) an alien who or whose child or parent has been battered or subjected to extreme cruelty in the United States and who otherwise satisfies the requirements of subsection 1641(c) of the Welfare Reform Act. 8 U.S.C.A. § 1641(b), (c) (West Supp. 1998).

Under these provisions, persons eligible for professional licensure under the Welfare Reform Act are United States citizens, non-citizen nationals (American Samoans), qualified aliens, nonimmigrants, aliens paroled into the United States under section 1182(d)(5) of the Immigration Act for less than one year, nonimmigrants whose visa for entry is related to their employment in the United States, citizens of freely associated states (the Republic of Palau, the Federated States of

---

[4]8 U.S.C.A. § 1101(a)(3) (West 1970). "National of the United States" is "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." *Id.* § 1101(22). Non-citizen United States nationals category presently includes only American Samoans. *See* Verification of Eligibility for Public Benefits, 63 Fed. Reg. 41662, 41668 (1998) (to be codified at 8 C.F.R. pt. 104).

Micronesia, or the Republic of the Marshall Islands), and foreign nationals not physically present in the United States. Thus, the Welfare Reform Act does not limit issuance of professional licenses to citizens and permanent residents of the United States. Accordingly, the Board may not deny licensure to Canadian or Mexican nationals solely because they are not citizens or permanent residents of the United States.

Your question as to whether the Board must determine if individuals seeking licensure "pursuant to NAFTA" are United States citizens or permanent residents is more complicated. We assume, given your reference to NAFTA, that the persons you ask about are citizens or permanent residents of Canada or Mexico and not of the United States. If such individuals are not physically present in the United States, the Board is not required to determine their immigration status under the Welfare Reform Act. With respect to all other Canadian or Mexican nationals, the Board must determine whether they are qualified aliens, nonimmigrants whose visa for entry is related to their employment in the United States, nonimmigrants, or aliens paroled to the United States for less than a year. Consequently, the Board must verify the immigrant status of Canadian and Mexican nationals who are physically present in this country to determine their eligibility for a professional license in accordance with the Welfare Reform Act.

In accordance with statutory directives, on November 17, 1997, the Department of Justice issued the *Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Act of 1996* [hereinafter Interim Guidance], setting forth procedures that benefit providers can use to verify citizenship, qualified alien status, and eligibility under the Welfare Reform Act before promulgation of the final regulations. *See* Interim Guidance, 62 Fed. Reg. 61344 (1997). On August 4, 1998, the Immigration and Naturalization Service issued a proposed rule requiring entities that provide federal benefits to verify that applicants are eligible for the benefits under the Welfare Reform Act according to the specified procedures. *See* Immigration and Naturalization Service Verification of Eligibility for Public Benefits, [hereinafter INS Verification] 63 Fed. Reg. 41662 (1998) (to be codified at 8 C.F.R. pt. 104). This rule also sets forth procedures by which a state or local government can verify eligibility for state or local benefits. The commentary to the rule advises that the Interim Guidance and the rule "should be used in tandem--the rule as the applicable legal verification requirement, and the Interim Guidance as a how-to guide on appropriate handling of these applications." *Id.* at 41663. Federal or state agencies providing federal public benefits must comply with the rule's verification requirements unless otherwise exempted. 8 U.S.C.A. § 1642(a)(1), (2) (West Supp. 1998); INS Verification, 63 Fed. Reg. 41662 (1998). Agencies providing state or local benefits have the option of using the verification procedures. 8 U.S.C.A. § 1642(a)(3) (West Supp. 1998); 63 Fed. Reg. 41662 (1998). The Board may consider it advisable to review the Interim Guidance and the rule before implementing any procedures for verifying the eligibility of alien licensure applicants for professional licenses in accordance with the Welfare Reform Act.

## S U M M A R Y

The Board of Professional Engineers must verify the immigration status of Canadian and Mexican nationals who are physically present in this country seeking licensure in Texas to determine their eligibility for a professional license in accordance with the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended. The Board may not deny licensure to Canadian or Mexican nationals solely because they are not citizens or permanent residents of the United States.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Sheela Rai
Assistant Attorney General